PEOPLE v BUCKEY

PEOPLE v McWHORTER

Docket Nos. 73929, 74232. Argued June 25, 1985 (Calendar Nos. 6, 7).
—Decided December 4, 1985. Rehearings denied *post,* 1205.

David G. Buckey was convicted by a jury in the Bay Circuit
Court, John X. Theiler, J., of assault with intent to commit
second-degree criminal sexual conduct. The Court of Appeals,
M. J. KELLY, P.J., and KINGSLEY, J. (CYNAR, J., concurring in
part), reversed in an opinion per curiam, holding that the
prosecution engaged in improper cross-examination of the de-
fendant regarding the credibility of other witnesses and in
improper final argument that the defendant's presence during
trial gave him an opportunity to fabricate testimony, thereby
infringing upon his right to be present at trial (Docket No.
68728). The people appeal, and the defendant cross-appeals.

Robert A. McWhorter was convicted by a jury in the Kalamazoo
Circuit Court, Marvin J. Salmon, J., of conspiracy to kidnap
and of kidnapping. The Court of Appeals, R. B. BURNS, P.J., and
R. M. MAHER and BELL, JJ., reversed in an unpublished opinion
per curiam, finding error in the prosecutor's assertion during
closing argument that because the defendant was present in
the courtroom throughout the trial, he was able to fabricate
testimony, and in questioning the defendant regarding his
financial condition before and after the kidnapping (Docket No.
54321). The people appeal, and the defendant cross-appeals.

In an opinion by Justice RILEY, joined by Justices RYAN,
BRICKLEY, and BOYLE, the Supreme Court *held:*

The prosecutors' comments during closing argument that the
presence of the defendants during trial gave them an opportu-

---

REFERENCES FOR POINTS IN HEADNOTES
[1] Am Jur 2d, Witnesses §§ 656-669.
  See the annotations in the ALR3d/4th Quick Index under Wit-
  nesses §§ 1, 4.
[2, 3] Am Jur 2d, Trial §§ 106 *et seq.*
  Comment or argument by court or counsel that prosecution evi-
  dence is uncontradicted as amounting to improper reference to
  accused's failure to testify. 14 ALR3d 723.

nity to fabricate or conform their testimony to that of other witnesses was not error requiring reversal.

1. Opportunity and motive to fabricate testimony are permissible areas of inquiry of any witness. A prosecutor may comment upon and draw inferences from the testimony of a witness, including a defendant, and may argue that the witness is not worthy of belief. Where supported by the evidence, as in these cases, an argument that the defendant's presence at trial afforded him an opportunity to fabricate testimony or to conform his testimony to that of other witnesses is proper comment upon credibility.

2. In *Buckey,* the questioning of the defendant by the prosecutor regarding the credibility of certain prosecution witnesses was improper. However, no unfair prejudice to the defendant resulted, and timely objection could have cured any prejudice. In *McWhorter,* remand is required to determine whether the prosecutor's questioning of the defendant relative to his financial condition before and after the kidnapping was error which requires reversal.

*Buckey,* reversed and remanded.

*McWhorter,* reversed and remanded.

Justice CAVANAGH, joined by Chief Justice WILLIAMS, dissenting, stated that comments by a prosecutor upon a defendant's opportunity to fabricate testimony because of being present at trial impermissibly infringe upon the defendant's right to be present at trial and the rights to testify and to assist in defense. The focus in determining whether a prosecutor's comments were justified should be on whether the comments could impermissibly chill or infringe upon the exercise of a constitutional or statutory right, rather than whether the comments were direct or indirect. Prohibition of comments concerning a defendant's opportunity to fabricate testimony because of being present at trial would not be debilitative to the people because of the numerous ways of attacking a defendant's credibility already available to a prosecutor. While the mere fact that a defendant has been listening to other witnesses is not particularly probative of credibility, its prejudicial effect could be substantial.

Justice LEVIN, writing separately, stated that where the record does not establish that a defendant provided a statement before trial and the defendant does not testify before the conclusion of all the evidence, a comment by the prosecutor implying that the defendant testified last so that he could commit perjury is an unconstitutional comment on a matter not in evidence and on the defendant's earlier failure to give a

statement, and is also violative of the presumption of innocence and of the defendant's right to the assistance of counsel.

133 Mich App 158; 348 NW2d 53 (1984) reversed.

OPINION OF THE COURT

1. PROSECUTING ATTORNEYS — WITNESSES — CLOSING ARGUMENT — COMMENTS ON CREDIBILITY.

A prosecutor may comment upon and draw inferences from the testimony of a witness, including a defendant, and may argue that the witness is not worthy of belief; where supported by the evidence, an argument that the defendant's presence at trial afforded him an opportunity to fabricate testimony or to conform his testimony to that of other witnesses is proper comment upon credibility.

DISSENTING OPINION BY CAVANAGH, J.

2. PROSECUTING ATTORNEYS — WITNESSES — CLOSING ARGUMENT — COMMENTS ON CREDIBILITY.

*Comments by a prosecutor upon a defendant's opportunity to fabricate testimony because of being present at trial impermissibly infringe upon the defendant's right to be present at trial and the rights to testify and to assist in defense.*

OPINION BY LEVIN, J.

3. PROSECUTING ATTORNEYS — WITNESSES — CLOSING ARGUMENT — COMMENTS ON CREDIBILITY.

*Where the record does not establish that a defendant provided a statement before trial and the defendant does not testify before the conclusion of all the evidence, a comment by the prosecutor implying that the defendant testified last so that he could commit perjury is an unconstitutional comment on a matter not in evidence and on the defendant's earlier failure to give a statement, and is also violative of the presumption of innocence and of the defendant's right to the assistance of counsel.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *George B. Mullison,* Prosecuting Attorney, and *Thomas J. Rasdale* and *Martha G. Mettee,* Assistant Prosecuting Attorneys, for the people in *Buckey.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *James J. Gregart,* Prose-

cuting Attorney, and *Michael H. Dzialowski* and *Joseph S. Skocelas,* Assistant Prosecuting Attorneys, for the people in *McWhorter.*

State Appellate Defender (by *Richard B. Ginsberg*) for defendant Buckey.

State Appellate Defender (by *F. Martin Tieber*) for defendant McWhorter.

RILEY J. The issue common to both of these cases, and the one which we directed the parties to address, is whether error requiring reversal occurs when the prosecutor argues that the defendant's presence at trial is an opportunity for the defendant to fabricate testimony.

The Court of Appeals panels in both cases answered affirmatively, thus reversing defendants' convictions. We reverse the judgments of the Court of Appeals.

In *Buckey,*[1] two members of the Court of Appeals panel also held that questions by the prosecutor during cross-examination of defendant concerning whether various prosecution witnesses were lying constituted error requiring reversal. Here again, we reverse the judgment of the Court of Appeals.

The *McWhorter*[2] panel also found that the prosecutor erred in questioning defendant about his financial condition at times both before and after an alleged kidnapping. We remand the case to the Court of Appeals for a determination whether this was error that requires reversal.

Finally, after we granted the prosecutors' appli-

[1] *People v Buckey,* 133 Mich App 158; 348 NW2d 53 (1984), *lv gtd* 419 Mich 924 (1984).

[2] *People v McWhorter,* unpublished opinion per curiam, decided May 2, 1984 (Docket No. 54321), *lv gtd* 419 Mich 924 (1984).

cations for leave to appeal, both defendants brought cross-appeals alleging other errors which had not been addressed by the Court of Appeals. We remand the cases to the Court of Appeals for consideration of these issues.

# I

## A. *People v Buckey*

Defendant Buckey was convicted of assault with intent to commit criminal sexual conduct in the second degree. An earlier trial resulted in a mistrial when the jury was unable to agree upon a verdict. In both proceedings, Buckey was charged with and tried for the completed offense of second-degree criminal sexual conduct. MCL 750.520c(1)(f); MSA 28.788(3)(1)(f).

Testimony established that defendant met the complainant at a bar on the evening in question and that after some period of time the two left in a jeep. Defendant drove to a field and stopped the vehicle. The complainant testified that defendant touched her breasts and that he forced her to touch his exposed genitals. She further testified that she struggled with defendant to get out of the jeep and that, when she did get out, defendant grabbed her, pushed her to the ground, and got on top of her. At that point a car pulled up, and she got out from under defendant and ran over to the car. The occupants, four boys, gave her a ride home. The four boys testified to seeing defendant either push the complainant to the ground or hold her on the ground.

Defendant gave a statement to the police when he was arrested in which he claimed that the complainant had not objected to his sexual advances. He further stated that she "freaked out" after she declined his proposition of further sexual

activity. He stated that nothing happened on the ground outside of the jeep.

At trial, defendant's testimony was consistent with his statement, except for his description of what had happened outside of the jeep. He testified that she had fallen to the ground as she got out of the vehicle. She tried to kick him and may have fallen again as she ran to the boys' car, and he may have fallen at that time as well.

During his closing argument in both trials the prosecutor made the following unobjected-to remarks:

> If you'll recall his cross-examination testimony you'll recall that he testified that he was present at the preliminary examination back in December of 1981. He sat through the whole thing, he heard Debbie DeFord testify, he heard one of the boys testify, and he also admitted that he'd reviewed, to some extent anyway, the police report in connection with this case. Now, there's nothing wrong with this [sic, his] doing that, per se, reviewing the police report, but the point is, ladies and gentlemen of the jury, that the defendant knew—and also he was the last witness to testify in this case —he knew before he took the witness stand, completely, what the People's proofs were going to be. He knew completely what they were. He also admitted that he sat through proceedings in this case back in February of this year. All of our witnesses, except Trooper Stayer, testified at that time. He indicated on the witness stand he heard them all testify. He testified, himself, back then. He was cross-examined at that time. He indicated that he later heard all the remarks that both I made and his attorney made, concerning that testimony.
>
> So, ladies and gentlemen of the jury, the point is that the defendant has known for some time precisely what the People's proofs were going to be. He's had plenty of time to try to figure a way

around our proofs and also to get prepared to tell his story in a convincing manner.

Following his conviction, defendant appealed to the Court of Appeals, arguing, inter alia, that certain questions asked of him on cross-examination[3] and the above-quoted closing argument con-

---

[3] The prosecutor commenced his cross-examination of defendant by questioning defendant about his attendance at prior proceedings in the case and about reading police reports prepared in connection with the case. The following exchange occurred:

"*Q. [Prosecuting Attorney]*: And, Detective Harkin testified that you said that you didn't want to have your statements taped. You're saying that didn't happen?

"*A. [Defendant]*: That happened the second time he come over to the jailhouse, yes.

"*Q.* I'm not talking about that, I'm talking about the first time.

"*A.* That's correct, he never asked me.

"*Q.* Are you saying he's lying about that?

"*A.* That's correct.

"*Q.* And are you saying that Debbie DeFord is lying?

"*A.* Why would I say Debbie DeFord is lying?

"*Q.* Are you saying that Debbie DeFord is lying about what—her testimony was about what took place out on Nine Mile Road?

"*A.* I don't think she really knows what took place.

"*Q.* I'm asking you what—I'm asking if you're saying she's lying.

"*A.* Yes.

"*[Defense Attorney]*: I think he answered the question.

"*The Court:* It was responsive.

"*Q. [Prosecuting Attorney]*: All right, is it your testimony you're saying she's lying.

"*A. [Defendant]*: I don't think—like I said, I can't say she's lyin', all I'm sayin' is she don't really realize what happened out there.

"*Q.* How about—how about the boys who observed what they ob—, are you saying they're lying too?

"*A.* Uh-huh, about part of it.

"*Q.* All right. So, we've got at least Detective Harkin, that was one liar, and we've got four more, the four boys. You're saying that they're lying about certain things.

"*A.* I didn't say they were lying, all I'm saying is they didn't tell the—

"*Q.* You said (undistinguishable).

"*A.* —whole truth.

"*Q.* Well, I asked you, you indicated—are you saying that they were lying, Mr. Buckey?

"*A.* No, they weren't lyin', they're just not tellin' what they really saw.

stituted prosecutorial misconduct which deprived him of his right to a fair trial. All three members of the panel agreed that the prosecutor's closing argument resulted in error requiring reversal, relying on *People v Fredericks,* 125 Mich App 114; 335 NW2d 919 (1983), and *People v Smith,* 73 Mich App 463; 252 NW2d 488 (1977), *lv den* 402 Mich 803 (1977). Judge CYNAR disagreed with the majority's finding that the cross-examination was improper and not harmless beyond a reasonable doubt, writing that a timely objection could have cured any prejudice. *People v Buckey,* 133 Mich App 158, 167; 348 NW2d 53 (1984) (CYNAR, J., *concurring in part*).

## B. *People v McWhorter*

Defendant McWhorter was charged and convicted of conspiracy to kidnap, MCL 750.349, 750.157a; MSA 28.581, 28.354(1), and kidnapping, MCL 750.349; MSA 28.581.

The facts are succinctly set forth in the Court of Appeals opinion:

> Defendant's convictions arose out of the abduction of David Nixon from defendant's law office by William Snyder and Joseph Postelwaite. The evidence tended to show that the kidnapping was arranged by defendant as a means of extorting payment of legal services rendered.
> Defendant was retained by Douglas Suess to represent his parents and a friend who had been arrested in Florida while driving trucks filled with

"*Q.* All right, so we have one liar and four people not saying what they—they really saw, is that what you're saying?

"*A.* No, what I'm sayin' is I think they let Mr. Detective Harkin and the other cops—they programmed 'em.

"*Q.* You're the only one that hasn't been programmed in this case, is that what you're saying?"

marijuana. The marijuana was being shipped to other states, including Michigan, as part of an operation equally run by Suess and Nixon.

Nixon owed Suess his share of the proceeds from marijuana sales which had accumulated during the course of the venture. Suess intended to pay defendant with some portion of these proceeds; however, Nixon refused to provide him with any money. When Nixon refused to pay Suess, defendant told him to be more emphatic and forceful with Nixon.

Ultimately, defendant offered Snyder the opportunity to work off fees which Snyder owed to him. Defendant asked Snyder to follow Nixon and scare him into giving Suess some money. Snyder proved to be unable to accomplish the task and suggested recruiting some help. The pair agreed to seek assistance from Postelwaite.

At some point, Snyder, Postelwaite, Suess, and defendant all met at defendant's office. Defendant indicated that Nixon would be coming in shortly. The group agreed that if the meeting with Nixon did not go right and he would not pay the money, they would grab him.

Nixon arrived at defendant's office and went downstairs with defendant into his law library. An argument ensued. Defendant returned from the library and told Snyder to grab Nixon as soon as possible. Defendant and others then left the office. Snyder and Postelwaite bound Nixon with a cord and took him to Postelwaite's farm where he was tied to a tree. Nixon eventually agreed to pay $30,000. When this offer was conveyed to defendant, he agreed to accept the deal and arrangements were made for collecting the funds.

Defendant denied involvement in the extorting of money from Nixon. He claimed that he only learned that Nixon had been beaten and abducted after the fact.

A careful review of the record indicates that defendant confirmed much of the prosecution wit-

nesses' testimony, while denying those parts which would incriminate him. He made repeated references to other witnesses' testimony or lack thereof.

The meeting at defendant's office and the abduction took place on May 14, 1977. On the following day, Nixon paid $30,000 in cash and was released. Defendant's secretary picked up $15,000 in cash from Snyder and Postelwaite in a grocery store parking lot and took the money to defendant's office.

In his closing argument, the prosecutor made the following remarks:

> I'm not going to belabor that, because I think the line is drawn. I think on the one side of that line you have one person, two persons, six people and on the other side of the line you have Bob McWhorter who says here is where I was and all the other people who were involved say, hey, Bob, you were over here with us. What are you trying to tell us? You didn't know what was going on. You were obvious [*sic*] as to what was going on. We are the patsies on the other side of this line. I didn't know what was going on, says Bob McWhorter.
>
> Well, I challenge you and I ask you to look at that because that is where the line is drawn. Did he know? Did he not know? When you think about how that line is drawn, I want you to remember this. How many of those other witnesses were present in the courtroom during this testimony? How many people knew where that line was so when it came time to walk that line you knew where to walk? I submit to you only one person knew where that line was because that one person heard all that testimony.
>
> [*Defense Attorney*]: I will object, Your Honor. That is the defendant's right in every case. In fact, he has to be present during all the testimony. That's improper.
>
> *The Court:* You may proceed.

[*Prosecuting Attorney*]: Thank you, Your Honor. Specifically, Bob McWhorter is the only person who knew where to go, knew where the testimony had to go to avoid any implications and I submit to you he took that line and he walked it very carefully.

Defendant appealed to the Court of Appeals, raising numerous allegations. Relying on *People v Fredericks, supra,* the Court of Appeals reversed defendant's convictions, finding error requiring reversal in the prosecutor's closing argument.

## II

The common issue in these cases has been addressed by two panels of the Court of Appeals, with differing results. The issue was first considered in *People v Smith, supra.* The *Smith* Court found the prosecutor's unobjected-to remark, that the defendants' presence in court gave them opportunity to conform their testimony, "inadvisable." However, it held that the error was harmless because a curative instruction could have cured any prejudice. *Smith, supra,* 470-471.

The other case was *People v Fredericks, supra.* The *Fredericks* Court reversed the defendant's conviction because the prosecutor had argued to the jury that the defendant may have altered his testimony to match the testimony of other witnesses he had heard during the trial. As in *Smith,* the defendant in *Fredericks* had not objected to the prosecutor's argument. Unlike *Smith,* however, the *Fredericks* Court found the error to be of the type that could not be considered harmless. This conclusion was based on the Court's finding that the argument infringed on a fundamental right, *i.e.,* the right to be present at trial, which, the Court noted, is guaranteed by statute, MCL 768.3;

MSA 28.1026, and by the United States Constitution, US Const, Am VI. The *Fredericks* Court analogized the comment to prosecutorial references to the defendant's failure to testify. Comments of the latter type are erroneous because they infringe on the defendant's constitutional right to remain silent. US Const, Am V; Const 1963, art 1, § 17; *People v Mancill,* 393 Mich 132; 223 NW2d 289 (1974). The *Fredericks* Court believed that just as comment on the defendant's failure to testify "place[s] an intolerable burden on the defendant's decision to exercise or forego his right to remain silent," reference to the defendant's opportunity to conform his testimony to that of other witnesses impermissibly burdens his right to be present at trial:

> This method of discrediting a testifying defendant's version of the facts places the defendant between the horns of an intolerable dilemma: the defendant must decide to either present himself at trial and risk being discredited by his presence or absent himself from trial and avoid the risk. A defendant in this position cannot freely exercise his right to be present at trial. Therefore, we hold that, in his argument to the jury, a prosecutor may not attempt to discredit a defendant's testimony by reference to the defendant's presence at the trial. [*Fredericks, supra,* 120.]

In contrast to *Smith* and *Fredericks,* cases from other jurisdictions have found similar remarks to be permissible argument on credibility. In telling brevity, the courts have rejected arguments identical to defendants' at bar that such remarks impermissibly infringe on the right to be present at trial. *State v Martin,* 101 NM 595, 599; 686 P2d 937 (1984); *State v Hoxsie,* 101 NM 7, 9; 677 P2d 620 (1984); *State v Howard,* 323 NW2d 872, 874

(SD, 1982); *Reed v State,* 633 SW2d 664, 664-666
(Tex App, 1982); *State v Robinson,* 157 NJ Super
118, 119-120; 384 A2d 569 (1978), *cert den* 77 NJ
484; 391 A2d 498 (1978).

In *State v Robinson, supra,* 120, the court held
that the prosecutor's comments[4] did not deny the
defendant his right to be present at trial or to
confront the witnesses against him:

> Obviously he did confront these witnesses and
> was present at his trial. And a reasonable reading
> of the comments clearly reveals that they were a
> comment on the credibility of defendant's testi-
> mony. It is well settled that when a defendant
> waives his right to remain silent and takes the
> stand in his own defense, he thereby subjects
> himself to cross-examination as to the credibility
> of his story. And that issue would involve whether
> the story had been fabricated. . . . Here the issue
> of defendant's credibility was whether his testi-
> mony was tailored to that of the testimony of
> other witnesses, a perfectly proper inquiry. [Cita-
> tions omitted.]

## III

Relying on *Fredericks, supra,* defendants argue
that the prosecutorial comments at issue imper-
missibly burden a defendant's constitutional right
to be present at trial by penalizing him for exercis-
ing that right.

---

[4] "He was sitting here while Mr. Buniak testified. Mr. Buniak told
us he used a specific mortar, a specific color in making mortar. It was
kind of his trademark. When I asked Mr. Robinson about that, he
said he used the same color. He had the ability to sit here and listen
to the other witnesses testify and . . . .

"Excuse me, ladies and gentlemen. As I was saying, I think it's
interesting to note that his story, Mr. Robinson's story, when he was
testifying from the witness stand comported with the other stories
that were presented in a way which I would point at and say it looks
incredible to me. It doesn't look credible. It looks unbelievable. It
looks like something fabricated." *Robinson, supra,* 119-120.

As noted above, the *Fredericks* Court analogized comment similar to that at issue to comment on a defendant's right to not testify at trial. Remarks of the latter type are prohibited because they ask the jury to draw the inference that the defendant is guilty or hiding something merely because he has not taken the stand. *Griffin v California*, 380 US 609; 85 S Ct 1229; 14 L Ed 2d 106 (1965); *People v Mancill, supra.*[5] Had the comment in the instant cases been something like: "If defendant was innocent, would he have appeared for trial?" the analogy *might* be applicable. That would seem to be a direct comment on the defendant's presence at trial. However, we think the analogy is strained on the facts of the cases at bar. Here, the comments only indirectly related to defendants' right to be present at trial. Any resulting inference was not directly of guilt, but rather that defendants had the opportunity to conform their testimony because they heard other witnesses testify.

Therefore, we are unable to agree with the Court of Appeals in the cases at bar that the prosecutors' arguments in fact commented directly on the defendants' right to be present at trial. Rather, we believe the arguments simply concerned the defendants' credibility. It is well-established that the prosecutor may comment upon the

[5] In a similar vein, defendants urge that a parallel be drawn between the alleged infringement on the right to be present at trial in their cases and impermissible intrusions on other rights—*e.g.,* prosecutorial comment on a defendant's exercise of his Sixth Amendment right to counsel held improper, *Bruno v Rushen,* 721 F2d 1193 (CA 9, 1983), *cert den* 469 US 920 (1984); *People v Meredith,* 84 Ill App 3d 1065; 405 NE2d 1306 (1980), testimony that the defendant's refusal to consent to a search held violative of his Fourth Amendment rights, *People v Stephens,* 133 Mich App 294; 349 NW2d 162 (1984), prosecutorial comment on the defendant's exercise of the marital privilege found to be error requiring reversal, *People v Spencer,* 130 Mich App 527; 343 NW2d 607 (1983); reference to a defendant's exercise of the Fifth Amendment right to remain silent at arrest held improper, *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973).

testimony and draw inferences from it and may argue that a witness, including the defendant, is not worthy of belief. *People v Wirth,* 108 Mich 307; 66 NW 41 (1896); *People v Couch,* 49 Mich App 69; 211 NW2d 250 (1973), *lv den* 391 Mich 755 (1973); *People v Cowell,* 44 Mich App 623; 205 NW2d 600 (1973).

Opportunity and motive to fabricate testimony are permissible areas of inquiry of any witness. Both arguments in the instant cases presented the prosecutions' theory that defendants' testimony appeared to be carefully drawn explanations of the testimony presented. In both cases, the prosecutors commented on the content of defendants' testimony in relation either to his own earlier inconsistent testimony (*Buckey*), or to the testimony of other witnesses (*McWhorter*).

Defendants further argue that other rights may be implicated if prosecutors are permitted to argue as did those in the instant cases—*i.e.,* the right to testify, the right to remain silent, and the attorney-client privilege. These latter rights may be affected, they contend, because, in an attempt to combat this prosecutorial tactic, a defendant might be induced not to testify, to waive his right to remain silent and make a statement at arrest, or to call his counsel as a witness to testify to earlier discussions which were consistent with the defendant's trial testimony.

This argument misses the point of why the prosecutors' arguments were not improper in these cases. We do not suggest that a prosecutor may, in every case, argue that a defendant who testifies has fabricated his testimony merely because he has sat through his trial and heard the evidence. Thus, it cannot be said that every defendant will be faced with a choice between forfeiting one right so that he may exercise another—*e.g.,* being pres-

ent at trial, but not testifying so as to avoid the risk of prosecutorial comment that he fabricated testimony. When, as here, however, the evidence does support that inference, the argument is perfectly proper comment on credibility. In this situation, the prosecutorial comment is not that the defendant was present at the trial, but that his presence gave him the opportunity to conform his testimony. To accept defendants' argument that they must choose between exercising their right to be present at trial and some other right would be to say that a defendant has the right to fabricate or conform testimony without comment.

Finally, we reject defendant Buckey's argument that the prosecutor's comments were improper because they focused on his status as a defendant. A defendant may be compelled at trial "to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." *Schmerber v California,* 384 US 757, 764; 86 S Ct 1826; 16 L Ed 2d 908 (1966); *People v Markley,* 99 Mich App 658, 661; 298 NW2d 615 (1980), *rev'd on other grounds* 413 Mich 852 (1982). These procedures might be said to take advantage of the defendant's presence at trial, yet our research has disclosed no case which has held such procedures violative of the defendant's right to attend his trial.

Therefore, we hold that the closing arguments in the instant cases were proper.

IV

Next, we consider the second instance of alleged prosecutorial misconduct which prompted reversal in *Buckey.* The conduct which was the basis for the finding of error was the prosecutor's cross-

examination of Buckey[6] in which he was asked whether he believed the complainant, the four young men, and Detective Harkin were lying.

The Court of Appeals found the questioning erroneous on the basis that "it [is] improper for a witness to comment or provide an opinion on the credibility of another witness since matters of credibility are to be determined by the trier of fact. *People v Adams,* 122 Mich App 759, 767; 333 NW2d 538 (1983), *remanded with jurisdiction retained* 417 Mich 1073; 336 NW2d 751 (1983)." *Buckey, supra,* 163. The cases cited by the Court of Appeals applying that rule concerned nondefendant witnesses commenting on the credibility of other witnesses or on the guilt or innocence of the defendant.[7] The Court of Appeals believed that the rule should also apply where the defendant is the witness providing the opinion. *Buckey, supra,* 163.

We agree with the Court of Appeals that it was improper for the prosecutor to ask defendant to comment on the credibility of prosecution witnesses. Defendant's opinion of their credibility is not probative of the matter. However, we do not agree that the error resulted in unfair prejudice to defendant.

This was not a case where the defendant might have been prejudiced by improper bolstering of the credibility of prosecution witnesses or by allowing an opinion on his guilt or credibility to be expressed. Concededly, the prosecutor's strategy was to discredit defendant by inviting him to label prosecution witnesses "liars." However, the substance of the exchange indicates that defendant dealt rather well with the questions. We fail to discern how he was harmed by the questions.

[6] See n 3.

[7] *People v Row,* 135 Mich 505, 507; 98 NW 13 (1904); *People v Adams, supra; People v Parks,* 57 Mich App 738, 750; 226 NW2d 710 (1975); *People v Walker,* 40 Mich App 142, 145; 198 NW2d 449 (1972).

Moreover, as the Court of Appeals noted, defendant's trial counsel did not raise the objection urged on appeal. We agree with Judge CYNAR that "[a] timely objection by defense counsel could have cured any prejudice, either by precluding such further questioning or by obtaining an appropriate cautionary instruction." *Buckey, supra,* 167 (CYNAR, J., *concurring in part*).

Therefore, we reverse the judgment of the Court of Appeals on this issue.

## V

We hold that the prosecutors' closing arguments that defendants' presence at trial gave them an opportunity to fabricate or conform their testimony to that of other witnesses did not result in error which requires reversal. Additionally, the prosecutor's cross-examination of defendant Buckey did not result in error requiring reversal. Accordingly, the judgments of the Court of Appeals in both cases are reversed. *Buckey* is remanded to the Court of Appeals for consideration of the issues raised in defendant's cross-appeal. *McWhorter* is remanded to the Court of Appeals for consideration of whether the prosecutor's questioning of defendant McWhorter as to his financial condition was error which would require reversal and also for consideration of the issues raised in defendant's cross-appeal.

RYAN, BRICKLEY, and BOYLE, JJ., concurred with RILEY, J.

CAVANAGH, J. I respectfully dissent from the majority's determination that a prosecutor may comment on a defendant's opportunity to fabricate testimony because of his presence at trial. I am

persuaded that such prosecutorial comments impermissibly infringe on a defendant's constitutional and statutory right to be present at trial, as well as his rights to testify and assist in his defense. See *People v Fredericks,* 125 Mich App 114, 119-120; 335 NW2d 919 (1983).

The majority concedes it would be error for a prosecutor to link a defendant's presence or absence at trial with his ultimate guilt or innocence, but that linking presence with credibility is permissible. In so holding, the majority pays no heed to the cases it cites in footnote 5 where prosecutorial comments which could infringe upon the exercise of other constitutional rights having little to do with guilt have been found improper. The focus should be on whether the comments could impermissibly chill or infringe the exercise of a constitutional or statutory right, rather than whether the comments are "direct" or "indirect." If a prosecutor can call a defendant a liar merely because he attended trial and his testimony differs from other witnesses, the defendant may either forego testifying or appearing in court until he testifies.

The majority does suggest that such prosecutorial comments are not always justified, but does not intimate when they would be improper. I do not know where the line could be drawn. Following the majority's reasoning, it would seem that any time a defendant's testimony differs, the prosecutor could argue that he manufactured certain details to make the story appear consistent with other testimony.

Prohibiting these comments would certainly not be debilitating to the people. The prosecutor already has numerous ways to attack a defendant's credibility—prior inconsistent statements; impeachment with prior convictions; arguments that defendant's story is inherently incredible or that

the evidence of guilt is overwhelming; comparisons of witnesses' demeanors while testifying. The mere fact that a defendant has been listening to other witnesses is not particularly probative of his credibility, but its prejudicial effect could be substantial.

I would not hold such comments to be error per se that requires reversal. See *People v Buckey,* 133 Mich App 158, 164-165; 348 NW2d 53 (1984); *Fredericks, supra; People v Smith,* 73 Mich App 463, 470-471; 252 NW2d 488 (1977), *lv den* 402 Mich 803 (1977). While the evidence against McWhorter was relatively strong, the Court of Appeals found error requiring reversal because the prosecution witnesses were convicted felons who had "entered into various favorable arrangements with the prosecution in exchange for their testimony." It also found that the testimony of McWhorter was not incredible and that it might have been believed but for the improper comments. I am not persuaded that this conclusion was clearly erroneous and would affirm that determination.

As to defendant Buckey, I find the issue to be even closer. Since Buckey's trial was essentially a credibility contest between complainant and defendant, the jury convicted defendant of the lesser included offense of assault with intent to commit second-degree criminal sexual conduct and the prosecutor improperly questioned defendant about the credibility of other witnesses, I would affirm the determination of the Court of Appeals that error occurred which requires reversal.

Williams, C.J., concurred with Cavanagh, J.

Levin, J. The question presented, in these cases consolidated on appeal, is whether the Court of

Appeals properly reversed the defendant's conviction on the basis of the prosecutor having adverted to the defendant's opportunity to hear all the evidence before he testified, with the attendant suggestion that the defendant may have modified his testimony from what he otherwise would have said. I would reverse and remand for a new trial in *McWhorter* and affirm in *Buckey.*

The opinion of the Court concludes that the prosecutor's comments do not require reversal. The Court draws back from suggesting that "in every case [the prosecutor may] argue that a defendant who testifies has fabricated his testimony merely because he sat through the trial and heard the evidence." In the instant cases, however, the Court finds "the evidence does support the inference" that the defendants "fabricated testimony."

The opinion of the Court does not specify what evidence shows or tends to show that either Buckey or McWhorter fabricated testimony. In *Buckey* there is evidence that he may have done so. In *McWhorter* there is not.

In *Buckey,* the defendant gave a statement to the police shortly after his arrest. He was present at the preliminary examination and at the trial. After the completion of the people's case and the presentation of all his other evidence, Buckey gave testimony that varied somewhat from a statement he had given to the police shortly after his arrest.

In *McWhorter,* the defendant gave a statement to an FBI agent. Because the statement was not offered by the people, and the people succeeded in having the statement excluded when the defendant sought to have it introduced, there was no record evidence that McWhorter's testimony at trial was altered as a result of what he heard at the trial.

A

Motive, bias, and interest are permissible areas of inquiry and comment. Because trials occur sometime after the event, all witnesses have an opportunity to fabricate their testimony. All witnesses have ample time to think about and rehearse what they are going to say. Most witnesses talk to someone before they testify, either an investigator or a lawyer. A witness may be asked if he has discussed his testimony with another person and whether he was made aware of the testimony of other witnesses.

The prosecutors here did not in so many words argue that the defendants had an opportunity to fabricate or that they fabricated their testimony, but, as the Court acknowledges, the innuendo is there.

All would agree that no witness has a right to fabricate. It is, however, the essence of the defendant's rights to remain silent, to consult counsel, and to be presumed innocent, that the defendant be made fully aware of all the evidence before he is required to decide whether to speak at all. Consequently, the defendant has the constitutionally protected opportunity to know all the evidence before he decides whether to speak. This right is not secured to him so that he can fabricate his testimony, but so that, among other things, he does not innocently overlook something before he speaks and thereby appear to be withholding something or speaking falsely.

Comment on the defendant's constitutionally protected opportunity to know all the evidence before he decides whether to speak is an attack on his exercise of his constitutional privileges and violative of those rights.

### B

Buckey was tried twice on the charge of second-degree criminal sexual conduct. The first trial concluded in a mistrial when the jury was unable to agree upon a verdict. The second trial concluded with Buckey being found guilty of the lesser offense of assault with intent to commit second-degree criminal sexual conduct.[1] The Court of Appeals reversed on the basis of two findings of prosecutorial misconduct. The first was the cross-examination of Buckey in which the prosecutor asked him whether he believed that the complainant, the four young men, and the police officer were lying. The second, which I consider here, was the prosecutor's closing argument suggesting that because Buckey had heard the testimony of the other witnesses he had an opportunity to fabricate an explanation for the testimony presented against him.

When Buckey was arrested on a charge of second-degree criminal sexual conduct, he made a statement to the police. He said that he had met the complainant in a bar and agreed to take her home. After a stop at a hotel, they left in his friend's Jeep to go "four-wheeling." The pair drove for a while and Buckey parked. He touched her breasts and she touched his genitals. According to Buckey, he asked if she wanted to make love, but she refused because she did not have any birth control device. She then started acting "weird." She got out of the Jeep and left with some boys who had driven up. When asked if anything happened on the ground outside the Jeep he said no.

At trial the complainant's account of what happened prior to the time they left the hotel was generally consistent with Buckey's statement to

---

[1] MCL 750.520g(2); MSA 28.788(7)(2).

the police and his trial testimony. She denied that they went "four-wheeling," but agreed that Buckey pulled off the road and parked. She also said that Buckey had touched her breasts, but claimed he had forced her to touch his genitals. She said that her response to Buckey's inquiry whether she was interested in having sex was indeed that she could not because she did not have any birth control device.

At this point, however, the complainant's account diverged sharply from Buckey's. According to the complainant, she had to struggle to get out of the car. Outside of the car Buckey grabbed her, pushed her to the ground, and got on top of her. When another car pulled up, she got up from under Buckey and went over to that car. The occupants, four boys, gave her a ride home.

The four boys testified at the preliminary hearing and at trial that when they drove into the field the two were on the ground. They testified to observing Buckey push the complainant to the ground or to his being on top of her.

In his closing argument the prosecutor commented on Buckey's opportunity to fabricate or conform his testimony: "The defendant has known for some time precisely what the people's proofs were going to be. He's had plenty of time to try to figure a way around our proofs and also to get prepared to tell his story in a convincing manner."[2]

---

[2] Immediately before this statement, the prosecutor said:

"If you'll recall his cross-examination testimony you'll recall that he testified that he was present at the preliminary examination back in December of 1981. He sat through the whole thing, he heard Debbie DeFord testify, he heard one of the boys testify, and he also admitted that he'd reviewed, to some extent anyway, the police report in connection with this case. Now, there's nothing wrong with his doing that, per se, reviewing the police report, but the point is, ladies and gentlemen of the jury, that the defendant knew—and also he was

## C

McWhorter was charged with and convicted of conspiracy to kidnap[3] and kidnapping.[4] The Court of Appeals held that comments made by the prosecutor during his closing argument concerning McWhorter's presence at trial and his opportunity to conform his testimony were improper, reversed his conviction, and remanded for a new trial.

McWhorter's convictions arose out of the abduction of David Nixon from McWhorter's law office

---

the last witness to testify in this case—he knew before he took the witness stand, completely, what the People's proofs were going to be. He knew completely what they were. He also admitted that he sat through proceedings in this case back in February of this year. All of our witnesses, except Trooper Stayer, testified at that time. He [the defendant] indicated on the witness stand he heard them all testify. He testified, himself, back then. He was cross-examined at that time. He indicated that he later heard all the remarks that both I made and his attorney made, concerning that testimony."

The prosecutor continued that there was evidence that Buckey had perjured himself:

"Now, there is abundant proof in this case that the defendant, in fact, cooked up an explanation around our proofs. Now, here is just one example of—of this. Now, if you recall the. evidence of Detective Harkin, before the preliminary examination, before Brian Guettler testified, before the police report had even been completed, back on November 9th, 1981, when Detective Harkin interviewed the defendant he told Detective Harkin that absolutely nothing took place on the ground outside the Jeep. He said that he only got out of the Jeep twice, once to urinate, and once to walk over to the boys [*sic*] car. After he sits through the preliminary examination, after he hears Brian Guettler testify, after he gets a chance to review the police report, however, he begins to say that something did happen on the ground outside the Jeep. Now, he had to come in here and testify that Debbie DeFord took a swing at him, and kicked at him, simply because he could not ignore the testimony of those four young boys. And, if you don't think he'd lie to you, think again. If you'd look at the lies he told Detective Harkin, you'd know that the truth doesn't mean much to him. I mean, he told a lie about nothing taking place on the ground outside the Jeep. In those circumstances it was in his best—he felt it was in his best interest to lie to Detective Harkin. He also believes that it's in his best interest to lie to you."

[3] MCL 750.349, 750.157a; MSA 28.581, 28.354(1).

[4] MCL 750.349; MSA 28.581.

by William Snyder and Joseph Postelwaite.[5]

The prosecution's theory was that McWhorter agreed with Suess, Snyder, and Postelwaite to kidnap Nixon as a means of extorting money from Nixon, approximately half of which was to be used by Suess to pay legal fees to McWhorter. The prosecution's explanation of the May 14 meeting was that McWhorter provided his office as a place where Nixon would willingly go and where the kidnapping could be executed if the meeting did not result in a satisfactory resolution.

---

[5] The evidence at trial established that McWhorter had been retained by Douglas Suess to represent his parents and Patrick Kenney who had been arrested in Florida while driving trucks which contained substantial quantities of marijuana. The marijuana was being shipped to other states, including Michigan, as part of an operation apparently run by Suess and Nixon.

Nixon owed Suess his share of the proceeds from marijuana sales which had accumulated during the course of the venture. Suess intended to pay McWhorter with some portion of these proceeds; however, Nixon refused to provide him with any money. When Nixon refused to pay Suess, McWhorter told him to be more emphatic and forceful with Nixon.

McWhorter offered Snyder an opportunity to work off fees which Snyder owed him. McWhorter asked Snyder to follow Nixon and to scare him into giving Suess some money. Snyder proved to be unable to accomplish the task and suggested recruiting some help. The pair sought assistance from Postelwaite.

Snyder, Suess, Postelwaite, Nixon, and McWhorter all met at McWhorter's office. Patrick Kenney and McWhorter's secretary, Charlene Crouch, were also present. At this point, the testimony of McWhorter and of the state's witnesses diverge. According to McWhorter, at some point after a discussion among the parties in the basement conference room at McWhorter's office, McWhorter left with Kenney and Crouch to have lunch at a local restaurant. Nixon testified that shortly after their departure, he emerged from the meeting room and was assaulted by Snyder and Postelwaite. Postelwaite testified that he and Snyder intended to extract information from Nixon regarding money owed Suess. Various forms of severe physical abuse failed to produce results, and, at some point, Snyder and Postelwaite concluded that they did not want to remain in McWhorter's office because someone might arrive. They took Nixon to Postelwaite's farm where he was held overnight and released the next day upon payment of $30,000 cash. Charlene Crouch testified that she picked up $15,000 in cash from Snyder and Postelwaite in the parking lot of a Kalamazoo grocery store on the following day and returned it to McWhorter's office.

At trial, McWhorter denied his involvement in the kidnapping. His testimony confirmed that of the other witnesses, but denied that he had any knowledge until after the fact of the planning or execution of the beating and abduction.

In his closing argument, the prosecutor said:

> I'm not going to belabor that, because I think the line is drawn. I think on the one side of that line you have one person, two persons, six people and on the other side of the line you have Bob McWhorter who says here is where I was and all the other people who were involved say, hey, Bob, you were over here with us. What are you trying to tell us? You didn't know what was going on. You were obvious [*sic*] as to what was going on. We are the patsies on the other side of this line. I didn't know what was going on, says Bob McWhorter.
>
> Well, I challenge you and I ask you to look at that because that is where the line is drawn. Did he know? Did he not know? When you think about how that line is drawn, I want you to remember this. How many of those other witnesses were present in the courtroom during this testimony? How many people knew where that line was so when it came time to walk that line you knew where to walk? I submit to you only one person knew where that line was because that one person heard all that testimony.
>
> [*Defense Attorney*]: I will object, Your Honor. That is the defendant's right in every case. In fact, he has to be present during all the testimony. That's improper.
>
> *The Court:* You may proceed.
>
> [*Prosecuting Attorney*]: Thank you, Your Honor. Specifically, Bob McWhorter is the only person who knew where to go, knew where the testimony had to go to avoid any implications and I submit to you he took that line and he walked it very carefully.

## D

The prosecutor could properly inquire on cross-examination why Buckey's statement to the police did not fully conform to the explanation that he gave after he had heard the other witnesses testify. Buckey's lawyer did not object to the prosecutor's argument. Under the circumstances, a new trial is not justified because of the prosecutor's argument.

In *McWhorter,* the defendant's lawyer did object. I would reverse and remand for a new trial in *McWhorter.*

## I

The prosecutor's comments in *McWhorter* were impermissible comments on matters not in evidence. There is nothing in the record that indicates that McWhorter changed or supplemented his testimony after hearing the testimony of other witnesses. Indeed, when McWhorter's lawyer twice sought to introduce the copy of a statement which McWhorter had given, before the preliminary examination, to an FBI agent, the prosecutor objected and succeeded in excluding the only evidence which would have supported or contradicted the comments in his closing argument. The prosecutor's assertion simply has no basis in the record. Even if one were to agree that a prosecutor may properly make the objected-to argument, a proposition I consider subsequently, before such a comment is made there must, at a minimum, be a factual basis in the record to support the claim.

Jury argument must be based solely on the evidence presented at trial and reasonable infer-

ences that can be adduced therefrom.[6] This is the rule in both civil and criminal cases and for both defense and prosecution counsel.[7] While the prosecutor may ask the jury to draw inferences from facts appearing in the record,[8] and may comment on the testimony,[9] and argue on the facts and the evidence that a witness is not worthy of belief,[10] he may not seek to obtain a conviction by going beyond the evidence before the jury[11] and imply that evidence not before the jury implicates the defendant.[12] Although, "[c]ounsel in their closing arguments are given wide latitude . . . *there must be a basis of fact* [in the evidence] for such assertions." *Pritchett v United States,* 87 US App DC 374, 376; 185 F2d 438 (1950). (Emphasis added.)[13]

---

[6] See, *e.g., Bell v Wolfish,* 441 US 520, 533; 99 S Ct 1861; 60 L Ed 2d 447 (1979), citing *Taylor v Kentucky,* 436 US 478, 485; 98 S Ct 1930; 56 L Ed 2d 126 (1978) (emphasis added), and see *Estelle v Williams,* 425 US 501; 96 S Ct 1691; 48 L Ed 2d 126 (1976). *In re Winship,* 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970); 9 Wigmore, Evidence (3d ed), § 2511; *Rommell-McFerran Co v Local Union No 369,* 361 F2d 658, 661-662 (CA 6, 1966).

[7] See, *e.g., Rommell-McFerran Co v Local Union No 369,* n 6 *supra; United States v Morris,* 568 F2d 396, 401 (CA 5, 1978); *Edwards v Sears, Roebuck & Co,* 512 F2d 276, 284-285 (CA 5, 1975); *Hall v Texas & New Orleans R Co,* 307 F2d 875, 878-880 (CA 5, 1962); 6 Wigmore, Evidence (3d ed), § 1806.

[8] See, *e.g., People v Morlock,* 233 Mich 284, 286; 206 NW2d 538 (1925); *People v Gonyea,* 126 Mich App 177; 337 NW2d 325 (1983); *People v Caldwell,* 78 Mich App 690, 691; 261 NW2d 1 (1977). See also *United States v DiHarce-Estrada,* 526 F2d 637, 641-642 (CA 5, 1976); *McMillian v United States,* 363 F2d 165, 168-169 (CA 5, 1966). *Dunn v United States,* 307 F2d 883, 886 (CA 5, 1962).

[9] *People v Cona,* 180 Mich 641; 147 NW2d 525 (1914). *Caldwell,* n 8 *supra.*

[10] See, *e.g., People v Couch,* 49 Mich App 69, 72; 211 NW2d 250 (1973), *lv den* 391 Mich 755 (1973).

[11] See, *e.g., United States v Vera,* 701 F2d 1349, 1361 (CA 11, 1983); *United States v Phillips,* 664 F2d 971, 1030 (CA 5, 1981), *cert den* 457 US 1136 (1982).

[12] See, *e.g., McMillian v United States,* n 8 *supra; United States v Martinez,* 466 F2d 679, 683 (CA 5, 1972); *United States v Velasquez,* 496 F2d 1009, 1012 (CA 5, 1974).

[13] See also *Stewart v United States,* 101 US App DC 51; 247 F2d 42 (1957); *People v Kirkes,* 39 Cal 2d 719, 723-724; 249 P2d 1 (1952).

The prosecutor's comment is particularly troublesome because "[t]he closing argument of [a prosecuting] attorney must be considered as coming from one who by virtue of his office and as representative of the State wields great power and influence." *People v Kirkes*, 243 P2d 816, 831 (Cal App, 1952).[14] Indeed, when an improper remark is made by a state's attorney, his position as a representative of the government may lead "a jury to place more confidence in [his] word . . . than in that of an ordinary member of the bar." *United States v Spangelet*, 258 F2d 338, 342 (CA 2, 1958).[15]

"The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict." ABA Code of Professional Responsibility, Ethical Consideration 7-13.[16]

## II

Where, as in *McWhorter*, the defendant has not given a statement admitted into evidence, such prosecutorial comments also constitute an impermissible comment on the defendant's exercise of his constitutional right to remain silent.

The United States Supreme Court has consistently held that after an accused has been given

---

[14] Superseded, *People v Kirkes*, n 13 *supra* (reversing an order denying new trial). In this prosecution for murder, where it appeared that the defendant was not indicted until more than eight years after the killing and the state's witness had told no one of a certain occurrence implicating defendant until after he was indicted, the argument of the prosecuting attorney that the witness' long silence was because of her fear for her own safety if she testified against the defendant was held improper because it was not supported by the evidence.

[15] See also *Allen v United States*, 106 US App DC 350; 273 F2d 85 (1959); accord *Stewart v United States*, n 13 *supra* at 55-56.

[16] The predecessor of this provision is ABA Canons of Professional Ethics No 5: "The primary duty of a lawyer engaged in public prosecution is not to convict, but to see that justice is done."

*Miranda* rights, his postarrest silence may not be used for impeachment purposes. *Doyle v Ohio,* 426 US 610; 96 S Ct 2240; 49 L Ed 2d 91 (1976). Although *Doyle* has been distinguished,[17] the Court has remained steadfast in holding that, where government action (*Miranda* warnings) may have induced the accused to remain silent, the government may not use his silence for impeachment purposes.[18]

Where an accused person does not give a statement before the trial, allowing the prosecutor to comment on his failure to speak until after all the evidence is in, tends to require the accused to give a statement before trial, indeed before the preliminary examination, to establish that his having heard the testimony of witnesses at the trial did not cause him to alter his testimony. This is contrary to the rationale of *Doyle.*

## III

The prosecutor's comment is contrary to a fundamental maxim of the American criminal justice system, the presumption of innocence, and violates the defendant's Fifth and Sixth Amendment rights.

The Due Process Clause " 'protects the accused

[17] See *Anderson v Charles,* 447 US 404; 100 S Ct 2180; 65 L Ed 2d 222 (1980), *reh den* 448 US 912 (1980) (defendant could be asked at trial why his pretrial statement differed from his trial testimony), *Jenkins v Anderson,* 447 US 231; 100 S Ct 2124; 65 L Ed 2d 86 (1980) (use of prearrest silence permissible), and *Fletcher v Weir,* 455 US 603; 102 S Ct 1039; 71 L Ed 2d 490 (1982) (silence after arrest but before *Miranda* warnings may be used to impeach defendant), *On Remand,* 680 F2d 437 (CA 6, 1982), habeas corpus proceeding, *Weir v Wilson,* 744 F2d 532 (CA 6, 1984), *cert den* 469 US 1223 (1985).

[18] See, *e.g., Jenkins v Anderson,* n 17 *supra,* 447 US 240 ("no government action induced petitioner to remain silent before arrest"), and *Fletcher v Weir,* n 17 *supra,* 455 US 606, citing *Anderson v Charles* ("*Doyle* bars the use against a criminal defendant of silence maintained after receipt of government assurances").

against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Francis v Franklin,* 471 US 307, 313; 105 S Ct 1965; 85 L Ed 2d 344 (1985).[19] This standard "provides concrete substance for the presumption of innocence— that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.'" *In re Winship,* 397 US 358, 363; 90 S Ct 1068; 25 L Ed 2d 368 (1970).[20]

The presumption of innocence "is a way of describing the prosecution's duty both to produce evidence of guilt and to convince the jury beyond a reasonable doubt." *Taylor v Kentucky,* 436 US 478, 483-484, n 12; 98 S Ct 1930; 56 L Ed 2d 468 (1978).[21] It permits "the accused to 'remain inactive and secure, until the prosecution has taken up its burden and produced evidence and effected persuasion . . . ." *Bell v Wolfish,* 441 US 520, 533; 99 S Ct 1861; 60 L Ed 2d 447 (1979).[22] The presumption also serves "as an admonishment to the jury to judge an accused's guilt or innocence *solely on the evidence adduced at trial* and not on the basis of suspicions that may arise from the fact of his arrest, indictment, or custody, or from other matters not introduced as proof at the trial." *Id.* at 533.[23] (Emphasis supplied.)

---

[19] See also *Patterson v New York,* 432 US 197, 204-205; 97 S Ct 2319; 53 L Ed 2d 281 (1977); *In re Winship,* n 6 *supra,* 397 US 364.

[20] The *Winship* opinion quotes *Coffin v United States,* 156 US 432; 15 S Ct 394; 39 L Ed 481 (1885). See also *Taylor v Kentucky,* n 6 *supra; Estelle v Williams,* n 6 *supra,* 425 US 503, reh den 426 US 954 (1976); *On Remand, Williams v Estelle,* 537 F2d 856 (CA 5, 1976).

[21] The *Taylor* opinion cites *Carr v State,* 192 Miss 152, 156; 4 So 2d 887 (1941), and McCormick, Evidence, p 806 (see McCormick, Evidence [3d ed], pp 967-969). See also *Bell v Wolfish,* n 6 *supra.*

[22] Quoting *Taylor v Kentucky, supra* at 484, n 12. Similarly, see *People v Shannon,* 88 Mich App 138, 143; 276 NW2d 546 (1979).

[23] Citing *Taylor v Kentucky, supra,* 436 US 485. See also *Estelle v*

Since "[t]he actual impact of a particular practice on the judgment of jurors cannot always be fully determined . . . , the probability of deleterious effects on fundamental rights calls for close judicial scrutiny." *Estelle v Williams,* 425 US 501, 504; 96 S Ct 1691; 48 L Ed 2d 126 (1976).[24] Such scrutiny requires that "[n]o insinuations, indications or implications suggesting guilt should be displayed before the jury, other than admissible evidence and permissible argument." *United States v Dawson,* 563 F2d 149, 151 (CA 5, 1977).[25] This is particularly true because, again, a prosecutor's "insinuations . . . are apt to carry much weight against the accused when they should properly carry none." *Berger v United States,* 295 US 78, 88; 55 S Ct 629; 79 L Ed 1314 (1935).[26]

When a prosecutor is permitted to comment that

---

*Williams,* n 6 *supra; In re Winship,* n 6 *supra;* 6 Wigmore, Evidence (3d ed), § 2511.

[24] The *Estelle* opinion cites *Estes v Texas,* 381 US 532; 85 S Ct 1628; 14 L Ed 2d 543 (1965), and *In re Murchison,* 349 US 133; 75 S Ct 623; 99 L Ed 942 (1955).

[25] Quoting *Brooks v State of Texas,* 381 F2d 619, 624 (CA 5, 1967).

[26] The Court said:

"The [prosecuting] attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, *insinuations* and, especially, assertions of personal knowledge *are apt to carry much weight against the accused when they should properly carry none." Berger v United States,* 295 US 78, 88-89; 55 S Ct 629; 79 L Ed 1314. (Emphasis supplied.)

See also *Viereck v United States,* 318 US 236, 247-248; 63 S Ct 561; 87 L Ed 734 (1943).

by testifying last a defendant could have molded his testimony to conform to that of prior witnesses, the prosecutor is reversing the burden of proof and presumption of innocence. The comment communicates to the jury that in the absence of evidence to the contrary it may assume both that the defendant testified last in order to conform his testimony and that he did in fact conform his testimony.

## IV

Not only does such prosecutorial comment seek to transform the presumption of innocence into a presumption of perjury, it penalizes the defendant for exercising his constitutional right to hear all the evidence, including his own witnesses, before testifying.

A defendant has a constitutional right to decide if, and when, he will take the stand. *Brooks v Tennessee*, 406 US 605, 612; 92 S Ct 1891; 32 L Ed 2d 358 (1972).[27] Before deciding whether to testify, a defendant has the right to hear not only all the state's evidence, but also all his own witnesses:

> Although a defendant will usually have some idea of the strength of his evidence, he cannot be absolutely certain that his witnesses will testify as expected or that they will be effective on the stand. They may collapse under skillful and persistent cross-examination, and through no fault of their own they may fail to impress the jury as honest and reliable witnesses. . . . [T]he defendant is unlikely to know whether this testimony will prove entirely favorable. Because of these uncertainties, a defendant may not know at the close of the State's case whether his own testimony will be

---

[27] *Cf. Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *Cuyler v Sullivan*, 446 US 335, 344; 100 S Ct 1708; 64 L Ed 2d 333 (1980).

necessary or even helpful to his cause. [*Id.* at 609-610.]

The United States Supreme Court has recognized that allowing the defendant to exercise this right may increase the risk and ease of a defendant's conforming his testimony, but concluded that the danger is not sufficient to justify burdening the defendant's decision whether and when he will testify. *Id.* at 611.[28]

Because the defendant has a right to hear all the state's evidence, as well as his own evidence, before deciding whether to testify, court procedures that burden exercise of this right have been regarded as violative of the Sixth Amendment right to counsel. "[T]he right to counsel is the right to the effective assistance of counsel," *McMann v Richardson,* 397 US 759, 771, n 14; 90 S Ct 1441; 25 L Ed 2d 763 (1970),[29] and this right is denied when the government interferes with the ability of counsel to make the "important tactical decision," *Brooks v Tennessee, supra* at 612, whether and when the defendant will take the stand.[30] McWhorter's rights were burdened because exercise of his constitutional right to testify last subjected him to insinuations that he testified when he did to commit perjury by conforming his testimony to that of the preceding witnesses.

## V

Such insinuations constitute a penalty on the

[28] The Court held that a Tennessee statute requiring that a criminal defendant "desiring to testify shall do so before any other testimony for the defense is heard by the court trying the case," violated the accused's constitutional rights against self-incrimination and to the assistance of counsel.

[29] Cited in *Strickland v Washington,* n 27 *supra.*

[30] *Brooks v Tennessee, supra* at 612-613. *Cf. Strickland v Washington,* n 27 *supra* (citing cases); *Cuyler v Sullivan,* n 27 *supra,* 446 US 344.

exercise of constitutional rights. Few cases have dealt directly with the question whether comment on the defendant's opportunity to perjure himself by exercising his right to testify last is an infringement of his Fifth or Sixth Amendment rights.

*Griffin v California,* 380 US 609; 85 S Ct 1229; 14 L Ed 2d 106 (1965), is sufficiently analogous to this case to require recognition that constitutional error was committed. In *Griffin,* the prosecutor stressed the defendant's failure to take the stand and urged upon the jury the inference that such failure demonstrated the defendant's inability to deny his guilt. Holding such prosecutorial comment violative of the Fifth Amendment privilege against self-incrimination, the United States Supreme Court deemed the statement "a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly." *Id.* at 614.

The Court in *Griffin* focused its inquiry on whether Griffin had been "compelled . . . to be a witness against himself."[31] The instant case also calls into question the Sixth Amendment right to counsel. For the purpose of "penalty analysis," however, there is little, if any, valid distinction between the privilege against self incrimination and the right to counsel.[32] In both *Griffin* and the instant case, prosecutorial comments sought to raise an unfavorable inference from the exercise of a defendant's constitutionally protected right. Especially where the guilt of the accused turns

[31] US Const, Am V.

[32] Accord *United States ex rel Macon v Yeager,* 476 F2d 613, 615 (CA 3, 1973), *cert den* 414 US 855 (1973) (comment by prosecutor on defendant having called lawyer); *Zemina v Solem,* 438 F Supp 455 (D SD, 1977), *aff'd* 573 F2d 1027 (CA 8, 1978) (comment on defendant having called a lawyer); *People v Meredith,* 84 Ill App 3d 1065, 1071-1072; 405 NE2d 1306 (1980) (comment on defendant having called a lawyer).

largely on the credibility of the witnesses, such comment constitutes a "penalty" on the free exercise of those rights.

In *Griffin* the inference was that unless the defendant were guilty he would not have exercised his Fifth Amendment right and refused to testify. Here the inference is that unless McWhorter needed to hear the testimony of the other witnesses so that he could conform his testimony to theirs he would not have exercised his constitutional right to testify at the conclusion of all the evidence. Justice Hugo Black's concurring remarks in *Grunewald v United States,* 353 US 391, 425-426; 77 S Ct 963; 1 L Ed 2d 931 (1957), are apposite:

> [There are] no special circumstances that would justify use of a constitutional privilege to discredit or convict a person who asserts it. The value of constitutional privileges is largely destroyed if persons can be penalized for relying on them.

## VI

The majority respond to the argument that the prosecutor's comments infringe on the accused's right to be present at trial by relying on *Schmerber v California,* 384 US 757, 764; 86 S Ct 1826; 16 L Ed 2d 908 (1966), which held that the taking of a blood sample by a physician at police direction from the defendant over his objection after his arrest for drunken driving did not violate his Fifth Amendment privilege against self-incrimination. *Schmerber,* and related cases, *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967),[33] and *Gilbert v California,* 388 US 263; 87 S

---

[33] The Court held that requiring a defendant to appear in an identification lineup and say "put the money in the bag" did not violate the Fifth Amendment.

Ct 1951; 18 L Ed 2d 1178 (1967),[34] concerning identification procedures, were decided on the ground that the evidence was *non-testimonial* and outside the scope of the Fifth Amendment.[35]

The instant case is distinguishable from *Schmerber* and its progeny in that what is at issue is not the identification of the defendant, but rather the substantive content of his testimony. At the risk of being tautological, testimony is testimonial not physical.

## VII

The majority relies on cases from other jurisdictions. In *State v Robinson,* 157 NJ Super 118; 384 A2d 569 (1978), *cert den* 77 NJ 484; 391 A2d 498 (1978), an intermediate appellate court ruled that comments by the prosecutor in closing argument that testimony by the defendant " 'comported with the other stories that were presented in a way

[34] The Court held that the taking of handwriting exemplars was not violative of the Fifth Amendment.

[35] The Court said in *Schmerber:*

"[T]he privilege protects an accused from being compelled to testify against himself, or otherwise provide the State with evidence of a *testimonial* or *communicative* nature, and that the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to these ends." (Emphasis supplied.)

In *Wade* the majority reasoned:

"We have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance. . . . Similarly, compelling Wade to speak within hearing distance of the witnesses, even to utter words purportedly uttered by the robber, was not compulsion to utter statements of a *'testimonial'* nature; he was required to use his voice as an *identifying physical* characteristic, not to speak his guilt." (Emphasis supplied.)

In the companion case of *Gilbert v California,* the Court held that the taking of handwriting exemplars did not violate the defendant's rights. Although the Court acknowledged that one's voice and handwriting are means of communication, the majority said that a "mere handwriting exemplar, in contrast to the *content* of what is written, like the voice or body itself, is an *identifying* physical characteristic outside [the Fifth Amendment's] protection." (Emphasis supplied.)

which I would point at and say it looks incredible to me' " was a comment on the witnesses' credibility and did not deprive the defendant of his right to confront witnesses or to be present at trial. This opinion is unconvincing because of the court's failure to consider the presumption of innocence and the Fifth and Sixth Amendment arguments on which the lower court, 145 NJ Super 159; 366 A2d 1371 (1976), based its decision, as well as its failure to consider that there was no evidence in the record to indicate that the defendant fabricated his testimony.[36] In *Reed v Texas,* 633 SW2d 644 (Tex App, 1982), the court simply declared that a comment similar to the comment at issue here was "reasonable." In *State v Howard,* 323 NW2d 872 (SD, 1982), the court did not address the constitutional issues and simply concluded that the comment challenged the defendant's credibility. The courts in *New Mexico v Hoxsie,* 101 NM 7; 677 P2d 620 (1984), and in *State v Martin,* 101 NM 595; 686 P2d 937 (1984), relied, without discussion, on the decision in *Robinson.*

I find more persuasive the decisions of the Court of Appeals,[37] particularly the well-reasoned opinion in *People v Fredericks,* 125 Mich App 114; 335 NW2d 919 (1983), which have uniformly held that such comments are improper.[38]

[36] The Court of Appeals opinion in the instant case parallels *People v Fredericks,* 125 Mich App 114; 335 NW2d 919 (1983).

[37] *People v Smith,* 73 Mich App 463, 470-471; 252 NW2d 488 (1977), lv den 402 Mich 803 (1977); *People v Fredericks,* 125 Mich App 114; 335 NW2d 919 (1983); *People v Buckey,* 133 Mich App 158; 348 NW2d 53 (1984); *People v Morris,* 139 Mich App 550; 362 NW2d 830 (1984).

[38] It appears that, excluding judges sitting by designation, at least eight Court of Appeals judges have agreed, in principle, that such remarks impermissibly infringe on a defendant's Fifth and Sixth Amendment rights.

In three of the cases, *Smith, Fredericks,* and *Buckey,* defendant's counsel failed to object at trial. In *Smith,* the panel found the error to be harmless. In two cases, *Fredericks* and *Buckey,* although defense

## VIII

The state contends in *McWhorter* that the prosecutor's comments, if error, were harmless. The error was not harmless beyond a reasonable doubt.

The state must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v California,* 386 US 18, 24; 87 S Ct 824; 17 L Ed 2d 705 (1967). An error of constitutional dimension is not harmless if "there is a reasonable possibility that [it] might have contributed to the conviction." *Fahy v Connecticut,* 375 US 85, 86-87; 84 S Ct 229; 11 L Ed 2d 171 (1963).

In *McWhorter,* because the critical issue was McWhorter's knowledge and participation in the plan before the fact, his credibility as a witness was a central issue. Most of the persons who testified for the people acknowledged their complicity in the commission of the offense. This is not a case where the evidence against the defendant was otherwise "so overwhelming"[39] that the constitutional error did not, beyond a reasonable doubt, contribute to his conviction.

The prosecutor's comments concerning the defendant's order of testimony would appear to have been directed to, and may have had the effect of, raising in the jurors' minds at least the inference that McWhorter was perjuring himself so as to appear not guilty. Such an inference might tend to

counsel failed to object at trial, the Court of Appeals reached the merits and found the comments were reversible error. The *Buckey* panel read *Smith* as finding such comments to be "improper and therefore in error."

In the most recent case, *Morris,* defense counsel objected. The Court of Appeals found the comment to be "ill-advised," but held that the trial court's instruction was curative.

[39] *Milton v Wainwright,* 407 US 371; 92 S Ct 2174; 33 L Ed 2d 1 (1972); *Harrington v California,* 395 US 250, 254; 89 S Ct 1726; 23 L Ed 2d 284 (1969).

cause the jury to disbelieve McWhorter's version of the events.

## IX

In sum, where the record does not establish that the defendant provided a statement before the trial and he does not testify before the conclusion of all the evidence, a comment by the prosecutor that the defendant testified last with the innuendo —there is no other reason to make the argument —that he perjured himself, is an unconstitutional comment on a matter not in evidence, and on the defendant's failure earlier to give a statement, and is also violative of the presumption of innocence and of the defendant's right to the assistance of counsel.

I would affirm in *Buckey,* and remand for a new trial in *McWhorter.*