*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOSEPH ALFRED MITCHELL,

Defendant-Appellant.

UNPUBLISHED
March 17, 2020

No. 346300
Washtenaw Circuit Court
LC No. 17-000605-FH

Before: CAMERON, P.J., and SHAPIRO and LETICA, JJ.

PER CURIAM.

Defendant, Joseph Alfred Mitchell, appeals his jury trial convictions of domestic violence, MCL 750.81(2), and interfering with electronic communications, MCL 750.540(5)(a).[1] The trial court sentenced Mitchell to two years' probation for the misdemeanor and, if he successfully completed probation, a suspended sentence of one to two years' imprisonment as to the felony. We affirm.

## I. RELEVANT FACTS

This matter arises from Mitchell assaulting his wife while they were in their home with their minor child. Before the assault, Mitchell, his wife, and their five-year-old daughter, GM, went to a park to spend time with friends. Mitchell consumed alcohol at the park and later went to a second park, where he consumed more alcohol. At some point that evening, the victim and GM went home without Mitchell. According to the victim, when she returned home, she placed a pillow and blanket on the couch for Mitchell because she was upset with him. The victim then began to give GM a bath. When Mitchell returned home, he entered the bathroom and said to the victim, "don't forget who's in control here." The victim asked Mitchell to leave the bathroom. Mitchell eventually left the bathroom, and the victim closed the door. A short period of time later, Mitchell returned to the bathroom, pushed the victim against the towel rack, and put his hand

---

[1] The jury acquitted Mitchell of assault with a dangerous weapon, MCL 750.82, and assaulting, resisting, or obstructing a police officer, MCL 750.81d(1).

around her throat. Mitchell then yelled, "don't forget who's in control here." Mitchell eventually released the victim and left the bathroom again. At that point, the victim left GM in the bathtub and ran to their bedroom to call 911, but Mitchell entered the bedroom and pushed the victim onto the bed. He then got on top of the victim and put his hands around her throat so that she could not get up. After Mitchell got off of the victim, she ran back to the bathroom, closed and locked the door, and called 911.

While the victim was talking with emergency responders, Mitchell forced the bathroom door open and entered the bathroom with a handgun. According to the victim, Mitchell put his hand around her throat, held the gun to her head, and screamed, "do you want to die?" Mitchell then took the phone from the victim, threw the phone, and left the bathroom. The victim moved GM from the bathtub and lowered her out of the one-story window to the back patio. The victim went outside, picked up GM, and drove to a friend's house. Police officers arrested Mitchell later that night.

Mitchell was charged with domestic violence; interfering with electronic communications; assault with a dangerous weapon; and assaulting, resisting, or obstructing a police officer. At trial, the parties agreed not to force GM to testify about the assault. Instead, the following stipulation was read to the jury at the close of the prosecutor's proofs:

> [GM,] age five at the time[,] gave a statement to Child Protective Services [CPS] on August the second, 2017, that is not inconsistent with the testimony that you did hear from [the victim] . . . . [H]owever, [GM] denied seeing [Mitchell] with a gun during the incident. And, that would just be a stipulation between the parties that if called to testify the worker from CPS would—would state that.

Mitchell testified on his own behalf at trial, and stated that he did not recall interacting with the victim at their home after he returned from the park on the night in question. Nonetheless, in relevant part, Mitchell's defense at trial was that the victim had fabricated the entire incident in order to gain sole custody of GM.

The jury disagreed and convicted Mitchell of domestic violence and interfering with electronic communications. However, the jury acquitted Mitchell of assault with a dangerous weapon and assaulting, resisting, or obstructing a police officer. After sentencing, this appeal followed.

## II. ANALYSIS

### A. PROSECUTORIAL ERROR

Mitchell argues that he is entitled to reversal of his conviction and a new trial because the prosecutor deprived him of a fair trial by committing several errors. We disagree.

"A prosecutor has committed [error] if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014). "A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence."

*People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007). "Issues of prosecutorial [error] are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id.* at 64. "The propriety of a prosecutor's remarks depends on all the facts of the case." *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002). "A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Dobek*, 274 Mich App at 64.

### 1. QUESTIONS REGARDING THE VICTIM'S TESTIMONY AND THE 911 CALL RECORDING

Mitchell argues that the prosecutor's questions about Mitchell's opinion of the victim's credibility and the "credibility of the 911 call" were improper. Because defense counsel objected to the prosecutor's questions on a different ground, the issue is unpreserved, see *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004) (holding that, to be preserved, an objection must specify the same ground for challenge as the party asserts on appeal).

Unpreserved issues regarding prosecutorial error are reviewed for plain error affecting substantial rights. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error has affected a defendant's substantial rights when there is "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* Moreover, "once a defendant satisfies these three requirements, . . . [r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* at 763-764 (quotation marks and citation omitted; alteration in original). A defendant bears the burden of persuasion with respect to prejudice. *Id.* at 763. "We will not find error requiring reversal if a curative instruction could have alleviated the effect of the prosecutor's misconduct." *People v Lane*, 308 Mich App at 62.

A prosecutor may not ask a defendant to comment on the credibility of the prosecution's witness because the defendant's opinion on the witness's credibility is not probative. *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985); *People v Loyer*, 169 Mich App 105, 116-117; 425 NW2d 714 (1988). The jury, as the finder of fact, determines whether a witness is credible. See *Dobek*, 274 Mich App at 71. On the other hand, it is not improper for a prosecutor to ask a defendant whether the defendant had a different version of the facts in order to ascertain which facts are in dispute. *People v Ackerman*, 257 Mich App 434, 449; 669 NW2d 818 (2003).

In this case, the prosecutor's alleged improper questioning occurred during cross-examination of Mitchell. Importantly, before the challenged questioning occurred, Mitchell testified that, despite not remembering anything that took place from the time he left the second park to the time he "woke up" before the police officers arrested him, he did not believe that the

assault occurred or that the victim's testimony could be true. The following line of questioning then occurred:

> *The Prosecutor*: How do you know? How can you make that statement that you don't believe it happened if you have no memory of the event? You either know something happened or you don't know something happened, you would agree with me; right?
>
> *Mitchell*: Right.
>
> * * *
>
> *The Prosecutor*: So, my question is—is you—you then therefore do not have any memories regarding the testimony that your wife testified to regarding the assault and you pointing a gun at her head and her calling the police, any of that?
>
> *Mitchell*: I don't have any memories of that timeframe in between those two things, no.
>
> * * *
>
> *The Prosecutor*: So, it's fair to say that you don't know—every— everything your wife testified to could have been 100 percent true, correct?
>
> *Mitchell*: I don't believe it is. I honestly don't.
>
> *The Prosecutor*: Okay. So, that's—how do you—where do you get that belief from?
>
> *Mitchell*: There's a number of things. I've been blacked out before, that hadn't happened.
>
> *The Prosecutor*: So, let me ask you. How do you know it didn't happen if you were blacked out?
>
> *Mitchell*: It's just completely inconsistent. It just doesn't fit. It's not—it just isn't possible that things went down the way it's said.

The prosecutor then gave Mitchell the opportunity to tell the "whole truth," and Mitchell indicated that the victim's allegations were being used to keep him from GM, to hurt him, and to get him to commit suicide. The prosecutor again questioned Mitchell about how he knew that the victim's testimony was not true and asked Mitchell if he had "listened to the 911 call."[2] Mitchell

---

[2] A recording of the victim's 911 call was played during the prosecutor's case-in-chief.

responded that he had listened to the 911 call. The following line of questioning then occurred:

> *The Prosecutor*: You heard what—that's—that was a true recollection of what was occurring, real time, on July 29th, 2017, you would agree with me?
>
> *Mitchell*: I—I heard the phone call, yes.
>
> *The Prosecutor*: Sure. And, during that phone call you hear a—like a thump, your wife exclaims "whoa", and there's some sort of noise, and then the phone basically is disconnected. Do you hear that in the 911 call?
>
> *Mitchell*: I didn't hear the thump. I heard—I heard her say, "whoa". The bathroom door doesn't have a stopper. It hits the wall every time.
>
> * * *
>
> *The Prosecutor*: So, you heard the 911 call and—and is it your testimony here today that that was whole—some whole big staged event by your wife to set you up?
>
> *Mitchell*: It could have been. It could have been framed in a context that isn't consistent with what she's alleging here or what people are saying.

Mitchell also stated that the victim "lied so much in this courtroom about big things that don't have anything to do with what happened that day" and that he could not believe her testimony because she was not being honest. When asked, Mitchell confirmed that he had "no memory of what happened" when he returned home on the evening in question. Nonetheless, when again asked by the prosecutor if it was "entirely possible that everything [the victim] testified to was accurate," Mitchell responded "I don't believe it is [true]. I honestly don't."

We conclude that the prosecutor did not ask Mitchell to comment on the victim's credibility or the "credibility of the 911 call." Rather, the prosecutor asked Mitchell to clarify his previous testimony that he knew that the assaults did not occur and to explain how he could have this belief given his testimony that he did not remember what had happened on the evening in question. Instead of explaining how he knew that the victim's testimony was not accurate, Mitchell challenged the veracity of the victim's testimony. The prosecutor then questioned Mitchell about the 911 call recording, which was consistent with the victim's testimony that Mitchell forcibly entered the bathroom when she was on the phone with emergency responders. Consequently, because the prosecutor's questions concerning the victim's testimony and the 911 call recording were not improper, Mitchell has failed to establish plain error. Furthermore, even if we were to find that the questions were improper, the trial court instructed the jury that it alone was to determine the facts and credibility of the witnesses, and "[j]urors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Accordingly, Mitchell has failed to establish plain error affecting his substantial rights.

## 2. QUESTIONS REGARDING GM'S STATEMENT TO THE CPS CASE WORKER

Mitchell next argues that prosecutorial error occurred because the prosecutor improperly asked him to comment on GM's credibility. Because defense counsel objected to the prosecutor's question on a different ground, Mitchell's challenges are unpreserved, see *Kimble*, 470 Mich at 309, and we review for plain error affecting substantial rights, see *Carines*, 460 Mich at 763-764.

After the prosecutor questioned Mitchell about how he knew that the victim's testimony was false given his lack of memory and the 911 call recording, the prosecutor asked Mitchell about GM. Specifically, the prosecutor asked Mitchell, "What would your daughter have to say about this?" Mitchell did not answer the question because defense counsel's objection was sustained. Later, the prosecutor asked, "Do you think that your daughter would lie to—to get back at your [sic] or something like that?" Defense counsel again objected. After the trial court sustained the objection, the prosecutor stated "Well, and Judge I would give an offer of proof is that I—I could have—I have a rebuttal witness who would testify to statements made by his daughter immediately after . . . ." The trial court interrupted the prosecutor and instructed counsel to approach for a discussion that could not be heard by the jury. After the brief bench conference, the trial court instructed the jury to leave the courtroom. After discussing the matter with the parties on the record outside the presence of the jury, the trial court indicated that it would permit the prosecutor to ask Mitchell if GM if he knew "of any reason . . . why his daughter would not tell the truth." The trial court further denied the prosecutor's request to call a rebuttal witness, regardless of Mitchell's answer to the question. When the jury returned, the following line of questioning occurred:

> *The Prosecutor*: So, Mr. Mitchell, I believe the question was is that you had previously testified that all of these reasons that you believed your wife was a liar, do you believe that your daughter would have lied about this incident?
>
> *Mitchell*: I don't know.
>
> *The Prosecutor*: You don't know the answer to that question?
>
> *Mitchell*: It's possible.
>
> * * *
>
> *The Prosecutor*: Why do you say it's possible?
>
> *Mitchell*: That my daughter lied?
>
> *The Prosecutor*: Correct.
>
> *Mitchell*: Or made something up?
>
> *The Prosecutor*: Right.

*Mitchell*: Because [she] was a five-year-old, she's creative, she liked to make stuff up. She's actually very silly, creative type. She's also somebody who likes to please her mom when she can but she's—just you know like a free spirit in that way.

As already stated, it is "improper for the prosecutor to ask [a] defendant to comment on the credibility of prosecution witnesses." *Buckey*, 424 Mich at 17. In *Buckey*, portions of the defendant's testimony conflicted with the testimony of the complainant, the eyewitnesses, and a police detective. *Id*. at 5-6, 7 n 3. The prosecutor asked the defendant during cross-examination whether the defendant thought the prosecution's witnesses "were lying." *Id*. at 7 n 3, 16-17. The *Buckey* Court noted that the prosecutor's strategy was to invite the defendant to label the prosecution's witnesses as liars and thereby discredit the defendant. *Id*. at 17. The *Buckey* Court found that the prosecutor's question was improper because a defendant's opinion of witnesses' credibility "is not probative of the matter." *Id*. However, the *Buckey* Court held that the error did not result in unfair prejudice to the defendant. *Id*. Specifically, the *Buckey* Court reasoned "the substance of the exchange indicate[d] that [the] defendant dealt rather well with the questions[,]" that defense counsel did not object to the questions, and that any prejudice could have been cured by a timely objection resulting in a prohibition on further questions of the type at issue or an appropriate cautionary instruction. *Id*.

Mitchell urges us to interpret the prosecutor's inartful question as an attempt to have Mitchell label GM as a liar in order to discredit Mitchell's testimony. In this light, defendant argues that the prosecutor's question was inappropriate. However, we do not review a prosecutor's remarks or questions in a vacuum. Rather, when examining for prosecutorial error, we review the entire record and examine a prosecutor's questions in context. See *Dobek*, 274 Mich App at 64. In the context of this case, we conclude that it was not improper for the prosecutor to ask Mitchell if he believed that GM "would have lied about this incident." The prosecutor was not asking Mitchell to comment on GM's credibility, but instead was asking Mitchell to explain whether GM had a motive to lie, which was highly relevant. The jury was aware that, aside from the victim's testimony that Mitchell possessed a gun, GM's statement to the CPS worker was not inconsistent with the victim's testimony. In response to Mitchell's testimony that he did not believe that the victim's testimony was truthful, the prosecutor referenced GM's statement and asked him if he thought that GM would have lied. When Mitchell responded that it was possible, the prosecutor gave Mitchell the opportunity to explain why he believed that GM "would have lied" or "made something up." Consequently, it appears that the prosecutor was seeking to clarify Mitchell's seemingly inconsistent testimony that he claimed to have no recollection of interacting with the victim at their home on the night of the assault, yet he testified that he was certain that false testimony had been introduced against him. When reviewing the prosecutor's questions in context, we find no plain error.

Furthermore, Mitchell would not be entitled to relief even if we were to conclude that the prosecutor asked Mitchell about whether he thought that GM had lied in order to invite Mitchell to label GM as a liar and thereby discredit Mitchell. Like the defendant in *Buckey*, 424 Mich at 17, "the substance of the exchange indicates that [Mitchell] dealt rather well with the [prosecutor's] questions." Mitchell took advantage of the prosecutor's open-ended, non-leading question concerning GM's statement and provides an entirely plausible explanation for why GM would have lied to the CPS worker. Indeed, it appears that any attempt on the part of the prosecutor to discredit Mitchell's testimony was at least in part ineffective given that Mitchel was acquitted on

the more serious charge of assault with a dangerous weapon. And like the defendant in *Buckey*, we fail to discern how Mitchell was harmed by the prosecutor's questions. Furthermore, given the facts in this case, there is no basis to conclude that the prosecutor's questioning resulted in the conviction of an actually innocent defendant or that the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. Consequently, Mitchell is not entitled to relief under plain-error review.

Next, Mitchell argues that he was denied the right to confrontation as a result of the prosecutor asking Mitchell what GM would think about his testimony and by "insinuating that immediately after the incident, [GM] made a statement even more detailed and more inculpatory than her statement to CPS." According to Mitchell, as a result of the prosecutor's comment and question, the prosecutor improperly referred "to an additional hearsay statement by a non-testifying witness" and Mitchell was denied the opportunity to question the witness. Because defense counsel objected to the prosecutor being permitted to question Mitchell about GM's statements even though she was not testifying at trial, the issue is preserved. See *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994).

Improper questioning of a defendant by the prosecutor is nonconstitutional error. *People v Blackmon*, 280 Mich App 253, 259; 761 NW2d 172 (2008). "[A] preserved, nonconstitutional error is not grounds for reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *People v Williams*, 483 Mich 226, 243; 769 NW2d 605 (2009). "An error is outcome determinative if it undermine[s] the reliability of the verdict[.]" *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (quotation marks omitted).

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c); *People v McLaughlin*, 258 Mich App 635, 651; 672 NW2d 860 (2003). Generally, hearsay is inadmissible unless it comes within an exception to the hearsay rule. *Id*. at 651. "Controversies over the admission of hearsay statements may also implicate the Confrontation Clause, US Const, Am VI, which guarantees a criminal defendant the right to confront the witnesses against him or her." *People v Dendel*, 289 Mich App 445, 452-453; 797 NW2d 645 (2010).

In this case, hearsay statements were not introduced into evidence. Rather, the prosecutor asked Mitchell what GM would say about his testimony. Defense counsel objected to the prosecutor's question, and the trial court sustained defense counsel's objection. The prosecutor later stated that he had "a rebuttal witness who would testify to statements made by [GM] immediately after . . . ." Because the trial court denied the prosecutor's request to call this rebuttal witness and the prosecutor did not indicate in the presence of the jury what testimony GM or the rebuttal witness would provide, inadmissible hearsay was not admitted into evidence through the prosecutor's questioning. Thus, Mitchell's argument that the Confrontation Clause was implicated is without merit, and Mitchell is not entitled to relief on this issue.

Mitchell also argues in a cursory manner that the prosecutor's comments constituted a deliberate insertion of "incompetent prejudicial evidence." However, because Mitchell fails to explain or rationalize his argument, it is abandoned. See *People v Henry*, 315 Mich App 130, 149; 889 NW2d 1 (2016). Moreover, even if the argument was not abandoned, Mitchell would not be

entitled to relief. There is no indication that the jury believed that the prosecutor's comments constituted evidence. The trial court instructed the jury that it was to decide the case based on the evidence and that the attorneys' questions were not evidence. Jurors are presumed to follow their instructions. See *People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330 (2009). Consequently, even if the argument was not abandoned, Mitchell would not be entitled to relief.

### 3. CUMULATIVE ERROR

Mitchell argues that, when considering the prosecutor's errors in combination, he was denied the right to a fair trial. To the extent that Mitchell is attempting to argue cumulative error based on the prosecutor's alleged misconduct, the argument is waived because the issue was not presented in the statement of questions presented, *People v Brown*, 239 Mich App 735, 748; 610 NW2d 234 (2000), and Mitchell cites no authority in support of the argument, *People v Hanna*, 223 Mich App 466, 470; 567 NW2d 12 (1997). To the extent that we have considered the argument, we conclude that the minor errors identified above did not aggregate to deny Mitchell a fair trial. See *Ackerman*, 257 Mich App at 454.

### B. ADMISSION OF EVIDENCE

Mitchell argues that the trial court erred by permitting the prosecutor to question Mitchell about GM's credibility. Because defense counsel objected to the prosecutor's question on a different ground, Mitchell's challenge is unpreserved, see *Kimble*, 470 Mich at 309, and we review for plain error affecting substantial rights, see *Carines*, 460 Mich at 763-764. As already discussed above, the prosecutor's question about GM's credibility was not improper, so the error did not affect Mitchell's substantial rights. Consequently, Mitchell is not entitled to relief under plain-error review.

Affirmed.

/s/ Thomas C. Cameron
/s/ Douglas B. Shapiro
/s/ Anica Letica